USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/1/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AMINOFF & CO. LLC d/b/a/ WATCH MY DIAMONDS,

                Plaintiff,

-against-

PARCEL PRO, INC. and FEDEX CORPORATION,

                Defendants.

**OPINION AND ORDER ON MOTION TO COMPEL ARBITRATION**

21-CV-10377 (AT)(KHP)

---

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

Defendant Parcel Pro, Inc. ("Parcel Pro") has moved to compel Plaintiff Aminoff & Co. LLC ("Aminoff") to arbitrate all of the claims Aminoff has asserted against it pursuant to the Federal Arbitration Act ("FAA"), 9U.S.C. § 3, et seq. (Mot. to Compel, ECF No. 16.) For the reasons stated below, Defendant Parcel Pro's motion is granted. The claims against Parcel Pro are referred to arbitration and this action is stayed against Defendant Parcel Pro only.

## BACKGROUND

In 2015, Plaintiff, a company that provides custom high-end jewelry, entered into an arrangement with Parcel Pro whereby Parcel Pro acted as Plaintiff's shipping agent to arrange for the shipment of Plaintiff's products to its customers. (Aff. of Craig Crichton ¶¶ 3, 25-26; ECF No. 18.) As a condition of utilizing Parcel Pro's services, all customers, including Plaintiff, had to agree to both Parcel Pro's Terms and Conditions (the "T&Cs") and the Terms of Use (the "TUs") (together, "Terms") in connection with using its online platform. (*Id.* at ¶¶ 5, 27-28.) Parcel Pro requires its customers to create an account on its website and assent to the Terms. (*Id.* at ¶6.) Plaintiff does not dispute this but argues that the notice of the Terms was not clear. On

1

occasion, Parcel Pro updates its Terms and requires customers to assent to the new Terms by checking a box and clicking an "Accept & Continue" button before proceeding to the booking area of the platform to arrange new shipments.  (*Id.* at ¶¶ 11-14.)  Plaintiff asserts that it was never required to assent to Parcel Pro's periodic updates to the Terms before proceeding to booking a shipment.  (Aff. of Dmitry Aminov ¶ 10, ECF 23-1.)  Parcel Pro also notifies its customers that they agree to the T&Cs each time the create a shipping label and receive a quote.  (Aff. of Craig Crichton ¶¶ 21-24.)  Specifically, the language reads, "[b]y creating this shipping label, you are agreeing to our Terms & Conditions."  The "Terms & Conditions" portion is hyperlinked to a separate page whereby the customer can review the specific language.  Plaintiff contends that this notice, which was provided every time Plaintiff requested a shipping label, does not provide reasonable notice given the size of the text, its location, and that clicking "Get Label" does not convey to users that they are agreeing to the T&Cs.  (Pl. Opp. to Mot. to Compel, ECF No. 23.)

Parcel Pro submitted computer records indicating the exact date and time Plaintiff assented to the Terms over the years when logging into its account.  (Aff. of Craig Crichton ¶ 31.)  Additionally, Parcel Pro submitted information showing that Plaintiff assented to the Terms dozens of times by creating a shipping label on the online platform.  (*Id.* at ¶ 38.)  The Terms included an arbitration provision that read in relevant part:

> *In the event of a dispute between you and Parcel Pro or any affiliate or agent of Parcel Pro, you agree it will be resolved under California and U.S. law by binding arbitration in Los Angeles, California pursuant to the Commercial Rules of the American Arbitration Association, by a panel of three arbitrators each with a transportation and insurance background appointed in accordance with those rules.  As such, you, waive the right to have a trial by jury.  Arbitrations will take place on an individual basis; class, mass,*

> consolidated or combined actions or arbitrations or proceeding as a private attorney general are not permitted. You must make written claim against Parcel Pro within sixty (60) days from the date of shipment delivery, or in the event of non-delivery, (60) days from the date of scheduled delivery or if none then from the date the shipment should have reasonably been delivered and you must also make written demand to Parcel Pro for arbitration within one year from such date. Failure to make timely written claim or written demand for arbitration will preclude any liability of Parcel Pro.

(Aff. of Craig Crichton, Ex. 1) (emphasis added).[1] Additionally, the "Claims Process" provision of the Terms states that "any dispute between you and the Insurance Underwriters shall be resolved by binding arbitration in Los Angeles, California pursuant to the Commercial Rules of the American Arbitration Association, by a panel of three arbitrators each with a transportation and insurance background appointed in accordance with those rules." (*Id.*)

On May 8, 2020, Plaintiff placed an order with Parcel Pro via its online platform to ship an expensive watch, valued over $100,000, to a customer in California. (Mot. to Compel, p. 8.) Parcel Pro made arrangements to ship the watch using Defendant FedEx Corporation ("FedEx") as the carrier. (*Id.*) The watch was never delivered and its whereabouts are unknown. (*Id.*) Plaintiff alleges that a FedEx employee stole the watch. (*Id.*)

When making the shipping arrangements, Plaintiff also purchased a protection plan through Parcel Pro that is backed by an independent insurer. (*Id.*) Under the protection plan, the customer becomes a payee under Parcel Pro's insurance policy with its insurer AIG, but Parcel Pro remains the insured party. (*Id.*) Plaintiff filed an insurance claim with Parcel Pro when its customer informed it that the watch never arrived, but the claim was ultimately

---

[1] Each previous iteration of the T&Cs that Plaintiff assented to also contained a similar arbitration provision.

denied. (*Id.*) Plaintiff then filed this action in state court alleging breach of contract, unjust enrichment, negligence, gross negligence, and replevin. (*Id.*) Defendant FedEx removed the action to this court asserting diversity jurisdiction. Parcel Pro now seeks to compel arbitration and stay the action as to it. (*Id*. at 9.)

In connection with the instant motion, both sides submitted affidavits to support their positions. Plaintiff has submitted the affidavit of Dmitry Aminov, co-owner of Aminoff. Parcel Pro submitted two affidavits by Craig Crichton (first in its initial submission and the second on reply), a Customer Relationship Manager. On March 31, 2022, the Court held oral argument regarding the motion.

## DISCUSSION

### A. Legal Standard

#### 1. *Validity of an Agreement to Arbitrate*

The FAA provides that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. It also provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition [the court] for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. In light of the federal policy favoring arbitration, the Supreme Court has repeatedly rejected challenges to arbitration agreements and held that "courts must 'rigorously enforce' arbitration agreements according to their terms." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (citation omitted); see also *AT&T Mobility LLC v.*

*Concepcion*, 563 U.S. 333, 344-46 (2011); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

To decide a motion to compel arbitration under the FAA, the Court considers (1) whether the parties agreed to arbitrate; (2) the scope of the parties' agreement; (3) whether Congress intended those claims to be non-arbitrable (if implicated); and (4) whether to stay the balance of the proceedings pending arbitration if only some of the claims are arbitrable. *Espinosa v. SNAP Logistics Corp.*, 2018 WL 9563311, at *2 (S.D.N.Y. Apr. 3, 2018) (citations omitted).  Further, the question of arbitrability is presumably determined by the Court, but this presumption can be overcome upon "clear and unmistakable evidence . . . that the parties intended that the question of arbitrability shall be decided by the arbitrator."  *Contec Corp. v. Remote Solution, Co.*, 398 F.3d 205, 208 (2d Cir. 2005) (citation omitted).  "When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract."  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 528 (2019).  Finally, "[w]here the scope of an arbitration agreement is ambiguous, the Federal Arbitration Act's policy favoring arbitration requires that 'any doubts be resolved in favor of arbitration.'"  *Bell v. Cendant Corp*, 293 F.3d 563, 566 (2d Cir. 2002) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25) (internal alteration omitted).

Because Parcel Pro is moving to compel arbitration, it bears the initial burden of showing that an arbitration agreement exists by a preponderance of the evidence.  *See Fleming v. J. Crew*, 2016 WL 6208570, at *3 (S.D.N.Y. Oct. 21, 2016) (citation omitted).  And, it is "'well settled' under New York law that arbitration will not be compelled absent the parties' 'clear, explicit and unequivocal agreement to arbitrate.'"  *Manigault v. Macy's East, LLC*, 318 F. App'x

6, 7-8 (2d Cir. 2009) (quoting *Fiveco, Inc. v. Haber*, 11 N.Y.3d 140, 144 (2008)). If Parcel Pro meets that prima facie showing, the burden shifts to Plaintiff to show that: (i) it did not consent to arbitration, (ii) the arbitration agreement is invalid or unenforceable, or (iii) the arbitration agreement does not encompass its claims. *See Application of Whitehaven S.F., LLC v. Spangler*, 45 F. Supp. 3d 333, 342-43 (S.D.N.Y. 2014), aff'd, 633 F. App'x 544 (2d Cir. 2015).

When deciding a motion to compel arbitration, the court applies a "standard similar to that applicable for a motion for summary judgment." *Myer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016)). The court should consider all relevant, admissible evidence contained in the pleadings, admissions on file, and affidavits. *Id.* (citations omitted). In the absence of a genuine issue of material fact regarding the formation of the arbitration agreement, the motion to compel must be granted if the dispute falls within the scope of the arbitration agreement. *Id.* Where a court determines it should "compel[] arbitration pursuant to a written agreement, both the FAA and New York law mandate that the action be stayed pending arbitration." *Espinosa*, 2018 WL 9563311, at *6 (citing 9 U.S.C. § 3; CPLR § 7503(a)).

   2. Online Agreements

In the context of a web-based agreement to arbitrate like the one in this case, where there is no paper document signed by the parties, the court must determine whether the plaintiff manifested assent to the agreement to arbitrate or was otherwise on notice of the agreement. *Myer*, 868 F.3d at 75. Web-based arbitration agreements come in various formats, some of which have been deemed enforceable and others which have not been enforced. When determining whether a plaintiff assented to the terms of a web-based contract, courts

6

look to the "design and content of the relevant interface" to determine if the contract terms were presented to the offeree in a way that would put it on inquiry notice of such terms. *Id.*; *see also Hidalgo v. Amateur Athletic Union of United States, Inc.*, 468 F. Supp. 3d 646, 655 (S.D.N.Y. 2020). Those that require a user to click an "I agree" button after being presented with terms have been termed "clickwrap" agreements. *Bernardino v. Barnes & Noble Booksellers, Inc.*, 2017 WL 7309893, at *3 (S.D.N.Y. Nov. 20, 2017), *report and recommendation adopted as modified*, 2018 WL 671258 (S.D.N.Y. Jan. 31, 2018). Courts have routinely upheld such agreements. *Id.*; *see also Myer*, 868 F.3d at 75.

B. Application

1. Agreement to Arbitrate

"[W]hen deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *Bell*, 293 F.3d at 566 (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)) (internal quotations omitted). "Under New York law, the touchstone of contract is mutual manifestation of assent, whether by written or spoken word or by conduct." *Sollinger v. SmileDirectClub, LLC*, 2020 WL 774135, at *2 (S.D.N.Y. Feb. 18, 2020) (internal quotation marks and citation omitted). "[A] party who executes a contract is considered bound by the terms of that contract." *Ruiz v. New Avon LLC*, 2019 WL 4601847, at *6 (S.D.N.Y. Sept. 22, 2019) (quoting *Stern v. Espeed, Inc.*, 2006 WL 2741635, at *1 (S.D.N.Y. Sept. 22, 2006)). Further, "a person who signs a contract is presumed to know its contents and to assent to them." *Arakawa v. Japan Network Group*, 56 F. Supp. 2d 349, 352 (S.D.N.Y. 1999) (internal quotations and citation omitted). Actual notice of certain contractual terms is not required for

7

a party to be bound if he is on inquiry notice of them and assents to them.  *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 289 (2d Cir. 2019).  For inquiry notice, "New York courts look to whether the term was obvious and whether it was called to the offeree's attention."  *Id.*

In this case the parties agree that New York state contract law governs whether a valid arbitration agreement exists.  *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 231 (2d Cir. 2016).  Accordingly, the Court considers whether the parties entered a valid contract to arbitrate under New York law.  "When determining whether a plaintiff assented to the terms of a web-based contract, courts 'look to the design and content of the relevant interface to determine if the contract terms were presented to the offeree in a way that would put [the offeree] on inquiry notice of such terms.'"  *Peiran Zheng v. Live Auctioneers LLC*, 2021 WL 2043562, at *4 (S.D.N.Y. May 21, 2021) (quoting *Starke*, 913 F.3d at 289).

Parcel Pro has met its burden in showing that an arbitration agreement exists by a preponderance of the credible evidence.  Plaintiff undoubtedly agreed to be bound by the arbitration provision in 2015 by entering Aminov's name (as co-owner) during registration and assenting to the T&Cs by clicking the check box.  Parcel Pro asserts, and Plaintiff does not dispute, that Plaintiff would not have been able to complete the registration process without checking the box.  In a screenshot attached to Aminov's affidavit, the application shows a separate field area where "Terms and Conditions" appear in larger text.  Immediately below the heading there is text that states, "[i]n order to open an account with Parel Pro, you must first read and agree to the Parcel Pro Terms and Conditions and Privacy Policy."[2]  (Aff. Dmitry

---

[2] Parcel Pro asserts that the screenshot Plaintiff provides is not the exact version that would have appeared. However, in the context of this motion Plaintiff's own assertion is sufficient to compel arbitration.

Aminov, Ex. 2.) The T&Cs and Privacy Policy appear in hyperlinked bolded green text. The registrant is then asked to enter its full name and title. Below that, there is text stating "[b]y checking this box, I certify that the information I have provided on this Parcel Pro, Inc. application is correct and true, and that I am an authorized representative of the company applicant. I acknowledge and agree to the Parcel Pro Terms and Conditions and Privacy Policy." Again, the T&Cs and Privacy Policy appear in hyperlinked bolded green text and requires registrants to check a box indicating their assent before submitting the application.

In Plaintiff's submissions, where it contends notice was unreasonable, Aminov, a co-owner of Aminoff, admitted to submitting the application on Parcel Pro's website on behalf of Plaintiff and checking the box. Indeed, this was also confirmed during the oral argument. Furthermore, Aminov not only had to check the box, but also had to type his name as the authorized representative and his tile in the text fields that clearly relate to the T&Cs. In light of this, Plaintiff's argument that the text underneath his name in the "Terms and Conditions" box were small and Aminov's statement that he "was not aware that a hyperlink was present that required me to read the Terms of Use or Terms and Conditions" (Aff. of Dmitry Aminov ¶ 7) is unavailing because he had to pause and give more than a moment to this section and could not continue creating the account without checking a box and assenting to the Terms. Courts have found similar presentations of terms and conditions containing an arbitration provision were sufficient to establish existence of an agreement, notice, and assent. S*ee Peiran Zheng*, 2021 WL 2043562, at *5 ("The Terms & Conditions, Privacy Policy, and Cookie Policy were capitalized, blue, and underlined, clearly indicating to a reasonably prudent internet user that those terms were hyperlinked.") (citation omitted); *Hidalgo*, 468 F. Supp. 3d 646, 657 (S.D.N.Y. 2020)

(finding that Plaintiff's inability to complete the application without first assenting to the terms and conditions indicated that he was aware of the existence of the clickwrap agreement); *Plazza v. Airbnb, Inc.*, 289 F. Supp. 3d 537, 549 (S.D.N.Y. 2018) (finding plaintiff's "notice and a manifestation of assent" to an arbitration clause contained in terms of service where defendant's website "would not allow users to access any part of Airbnb's website or continue using the platform until they indicated their assent to the TOS" and "directly underneath the scroll box, users had to click on "a check box with the text 'I agree to the terms and conditions of the updated Terms of Service [and other terms],' and a red button right below it, with white text, reading 'I Agree' or 'Agree.'").

Additionally, the page on Parcel Pro's platform requiring Plaintiff's assent was uncluttered and contained no other links that would obstruct a registrant's ability to understand the terms therein.  In *Meyer*, the Second Circuit compelled arbitration after finding "reasonable notice" based on a number of facts about the layout of the interface, namely that the screen was "uncluttered"; the "text, including the hyperlinks to the Terms and Conditions and Privacy Policy, appear[ed] directly below the buttons for registration"; included a warning that read, "By creating an Uber account, you agree to the TERMS OF SERVICE & PRIVACY POLICY"; and the "notice of the Terms of Service [was] provided simultaneously to enrollment" 868 F. 3d at 78-79.  The process for creating an account with Parcel Pro was very similar to the Uber process described in *Meyer*.  Moreover, in this case, Plaintiff also had to click a check box, further demonstrating his assent.  This also shows he was on inquiry notice. *See Starke*, 913 F.3d at 289 ("When an offeree does not have actual notice of certain contract terms, he is nevertheless bound by such terms if he is on inquiry notice of them and assents to them

through conduct that a reasonable person would understand to constitute assent") (citation omitted).

In sum, it is indisputable that Plaintiff was on inquiry notice of the Terms, including the arbitration provision in them. Thus, Parcel Pro's clickwrap agreement created a valid and enforceable contract under New York law. *Meyer*, 868 F.3d at 75 (an "electronic 'click' can suffice to signify the acceptance of a contract") (citation omitted); *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 397 (E.D.N.Y. 2015) ("almost every lower court to consider the issue has found 'clickwrap' licenses, in which an online user clicks 'I agree' to standard form terms, enforceable") (internal citations and quotations omitted).

Although Plaintiff disputes that he never had to assent to the terms when logging on after creation of the account, this is not material to the outcome of this issues given that it is clear he assented to the terms when creating the account. Further, Plaintiff does not dispute that every time he requested a shipping label, including for the shipment at issue, he was presented with text alerting him to the Terms just above where it had to click to obtain the shipping label. This text included a circle with an "i" in the middle of it, drawing the eye to the text, and providing a hyperlink to the Terms. Thus, it is clear that Plaintiff was on inquiry notice of the terms.

2.  *Scope of the Parties' Agreement*

As noted above, there is a "general presumption that the issue of arbitrability should be resolved by the courts," but that presumption can be overcome by "clear and unmistakable evidence . . . that the parties intended that the question of arbitrability shall be decided by the arbitrator." *Contec Corp.*, 398 F.3d at 208 (quoting *Bell*, 293 F.3d at 566). One example of

11

"clear and unmistakable evidence" overcoming the presumption is the parties' choice to "incorporat[e] by reference the . . . Rules [of the American Arbitration Association]," because the AAA's rules include an instruction that arbitrators are to determine their own jurisdiction. *Id.* at 211; see also *Lismore v. Societe Generale Energy Corp.*, 2012 WL 3577833, at *5 (S.D.N.Y. Aug. 17, 2012) ("[A] party who signs a contract containing an arbitration clause and incorporating by reference the AAA rules cannot later disown its agreed-to obligation to arbitrate all disputes, including the question of arbitrability.") (internal citations and quotations omitted). Under the FAA, a court must compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (internal citation and quotation omitted). Moreover, where "there is a legitimate dispute about the scope and applicability of the [arbitration] clause, the threshold question of arbitrability must be referred to the arbitrator." *Laumann v. N.H.L.*, 989 F. Supp. 2d 329, 338 (S.D.N.Y. 2013).

Here, the arbitration provision provides that any arbitration would be resolved "pursuant to the Commercial Rules of the American Arbitration Association." As confirmed by Parcel Pro's counsel at the oral argument, those rules provide that:

> (a) *The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.*
> (b) *The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part.* Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures, Rule 7 (amended and effective Oct. 1, 2013) (emphasis added).  Plaintiff contends that his claim arises from the insurance policy and thus not subject to arbitration.  However, the cited provisions in the T&Cs, under "Claim Process," also states that "any dispute between you and the Insurance Underwriters shall be resolved by binding arbitration in Los Angeles, California pursuant to the Commercial Rules of the American Arbitration Association[.]" Thus, it is clear that disputes regarding insurance claims for lost parcels also are subject to arbitration.  In any event, because the parties' agreement incorporates the American Arbitration Association rules noted above, an arbitrator—and not this Court—should determine whether any (or all) of the claims in this case are subject to arbitration under the T&Cs.  *See Micheli & Shel, LLC v. Grubhub Inc.*, 2022 WL 622828, at *5 (S.D.N.Y. Mar. 1, 2022) (finding "the contract at issue plainly delegates the question of arbitrability to the arbitrator" because of the incorporation of the Commercial Rules of the AAA in the terms); *Sollinger*, 2020 WL 774135, at *3 (holding an arbitrator was to decide the issues of arbitrability where the arbitration clause provided that any arbitration "shall be resolved using the rules of the American Arbitration Association.").

    3.  *Staying the Action Pending Arbitration*

"Where a court compels arbitration pursuant to a written agreement, both the FAA and New York law mandate that the action be stayed pending arbitration, if either party so requests."  *Shehadeh v. Horizon Pharma USA, Inc.*, 2021 WL 4176254, at *6 (S.D.N.Y. Sept. 14, 2021) (citing 9 U.S.C. § 3; N.Y. C.P.L.R. § 7503(a)).  However, if the Court determines that it cannot compel arbitration, the Court may instead "refer[ ] to arbitration" and stay the litigation.  *See* 9 U.S.C. § 3.  Such a referral to arbitration and stay of the litigation is appropriate where, as

here, the arbitration clause provides for arbitration to take place outside of this district, in Los Angeles, California.  Accordingly, this Court lacks the authority to compel arbitration outside of this district.  *See L. Offs. of Joseph L. Manson III v. Keiko Aoki*, 2020 WL 767466, at *4 (S.D.N.Y. Jan. 3, 2020) (collecting cases and granting request for a stay pending arbitration where arbitration clause at issue identified Washington, D.C. as the place of arbitration); *Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*, 2021 WL 37691, at *6 (S.D.N.Y. Jan. 5, 2021) (referring a case to arbitration where Court determined it could not compel arbitration in New Jersey and instead staying litigation).  Instead, it will refer the matter to arbitration.

## CONCLUSION

For the foregoing reasons, Parcel Pro's motion is GRANTED insofar as it has demonstrated that the parties have an arbitration agreement and that the arbitrator(s) must decide the arbitrability of the claims.  Because the arbitration provision requires arbitration in California, rather than compel arbitration, the Court refers this dispute between Parcel Pro and Plaintiff to arbitration and stays this litigation as to Parcel Pro pending the outcome of the same.  The stay does not apply to the claims against FedEx.

**SO ORDERED.**

Dated:   April 1, 2022
         New York, New York

KATHARINE H. PARKER
United States Magistrate Judge